UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM C. MILLER for himself and others similarly situated,<br><br>    Plaintiff,<br><br>v.,<br><br>GENEVA LONE HILL; BRET A. CRANDALL III; RAYCEN RAINES, III; JOHN DOE #1; and JOHN DOE #2,<br><br>    Defendants. | No.<br><br>PLAINTIFF REQUESTS TRIAL BY JURY |

## Class Action Complaint

The defendants in this case are individuals believed to play a role in the organization and operation of one or more enterprises that together operate a usury scam that victimized plaintiff William C. Miller and other citizens of Pennsylvania with internet loans at interest rates in excess of 600% A.P.R. Mr. Miller files this complaint for himself and others similarly situated for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), against the individual defendants solely in their personal capacities, and avers:

### Introduction

1. The plaintiff is William C. Miller, a citizen of Pennsylvania residing at 520 B Glen Echo Rd, Philadelphia, PA 19119.

2. Plaintiff William C. Miller received a consumer loan over the internet from the Wakpamni Lake Community Corporation ("WLCC") at 688.10% A.P.R. in violation of Pennsylvania usury laws. *Cash America Net v. Commonwealth of Pennsylvania*, 607 Pa. 432, 8 A.3d 282, 295 (2010). Exhibit "A."

3. There is a group of individuals who are employed by or associated with WLCC who caused, directly or indirectly, for WLCC to make and collect the loan from Mr. Miller.

4. The exact identities of all of the individuals responsible for the loan are unknown because WLCC has refused to disclose their identities. WLCC is represented by attorney Mark Dabertin who refuses to disclose the identifies of the people involved in its loans or the organizational structure of the lending enterprise. Exhibit "B."

5. The facts recited in this complaint represent Mr. Millers' best current knowledge of the identities of the individuals, the structure of the lending enterprise, and the individuals' roles in the enterprise. The facts are derived from plaintiff's research over the internet and the limited information attorney Dabertin supplied. To the extent the defendants assert that this complaint lacks specificity, it is because the defendants and Mr. Dabertin have refused to provide more specific information.

## Defendants

6. Geneva Lone Hill ("Hill") is a citizen of South Dakota believed to reside at 453 Batesland Housing, Batesland SD 57716.

7. Ms. Hill is employed as president of the community counsel of the Wakpamni Lake Community, which is a unit of municipal government of the Oglala Sioux Tribe, located in the vicinity of Pine Ridge South Dakota. There are believed to be other members of the community counsel, but the defendants refuse to disclose their identities.

8. Ms. Hill is also president of the Wakpamni Lake Community Corporation ("WLCC"), which is an entity created by the Wakpamni Lake Community to operate for profit businesses for the benefit of the Wakpamni Lake Community.

9. Ms. Hill is named as a defendant in her individual capacity.

10. Raycen Raines, III ("Raines"), is a citizen of South Dakota believed to reside at 3505 Chapel Hill Rd, Rapid City, SD 57702.

11. Raines is believed to be a board member and CEO of the Wakpamni Lake Community Corporation.

12. Raines is believed to have taken a lead role in getting Wakpamni Lake Community into the internet lending business, and is believed to have taken a lead role in organizing WLCC and acquiring capital for lending.

13. Raines is named as a defendant in his individual capacity.

14. Bret A. Crandall ("Crandall") is an individual believed to reside at 1413 Foxwood Ct, Annapolis MD 21409. Mr. Crandall is employed by WLCC as director of compliance. Exhibit "B" at 2.

15. Crandall is named as a defendant in his individual capacity.

16. John Doe #1 is a person or persons who are participating or conspiring with Raines, Hill, and Crandal to make high interest loans over the internet in the name of WLCC, including loans to citizens of Pennsylvania, and consist of the following categories of people:

(a). Members of the community counsel of the Wakpamni Lake Community who supported the community's entry into high interest internet lending and adopted the Wakpamni Lake Community Tribal Credit Code;

(b).   Members of the board of directors of the Wakpamni Lake Community Corporation; these individuals are directly responsible for the high interest internet lending activity at issue in this complaint;

(c).   Members of the Licensing Commission established by the Wakpamni Lake Community to issue lending licenses under the Wakpamni Lake Tribal Credit Code; and

(d).   Members of the Regulatory Commission created by the Wakpamni Lake Community to implement and enforce the Wakpamni Lake Tribal Credit Code.

17.   John Doe #2 is one or more persons who have invested in or provided capital for WLCC's lending operations. John Doe #2 may be a manager, officer, or owner of a lending business that may have a separate corporate identity, but has acquired a right to make loans in the name of WLCC under the authority of the Wakpamni Lake Tribal Credit Code, including loans to citizens of Pennsylvania.

## Background

18.   The Wakpamni Lake Community is a political subdivision of the Oglala Sioux Tribe, 107 West Main Street, Pine Ridge, SD 57770.

19.   As a political subdivision of an Indian tribe, the Wakpamni Lake Community claims to have tribal immunity, so that it may engage in activities that might be illegal, such as loan sharking, but remain shielded from civil liability.

20.   Defendants Raines, Hill, and John Doe #1 developed a plan to use the tribe's immunity to make high interest consumer loans over the internet. As part of the plan, plaintiff believes that Raines, Hill, and John Doe #1 sought to sell the use of the

tribe's identity to third parties to use to make usurious loans over the internet to borrowers across the United States without regard to, or in direct violation, of state lending laws.

21. As part of the plan, Raines, Hill, and John Doe #1 formed the Wakpamni Lake Community Corporation ("WLCC"). WLCC is believed to be incorporated under the tribal law of the Oglala Sioux Tribe as a wholly owned subsidiary of the Wakpamni Lake Community for the purpose of operating for profit businesses supposedly for the benefit of the community, including on line lending businesses.

22. Hill and John Doe #1 in their capacity as members of the Community Counsel of the Wakpamni Lake Community authorized the creation of WLCC as an entity to make internet loans and enacted the Wakpamni Lake Community Tribal Credit Code to govern its lending activity. The Tribal Lending Code is incorporated into this complaint by reference.

23. Raines, Hill, and, John doe #1 are believed to be members, officers, and employees of the Wakpamni Lake Community and WLCC and receive compensation for their services.

24. At some point in the process, Raines, Hill, and John Doe #1 affiliated with Mr. Crandall and made him director of compliance for WLCC.

25. As director of compliance, Mr. Crandall is believed to have devised and implemented the lending practices and procedures observed by WLCC and any entities lending under the identify of WLCC.

26. WLCC is believed to have affiliated with many lenders who operate lending businesses under various fictitious names, but all claiming to be owned by WLCC. Exhibit "C."

27. John Doe #2 is believed to be a person or persons who are owners, managers, or officers of lending companies who agreed to buy the right to operate their businesses under the identity of WLCC.

28. John Doe #2, in order to purchase the use the identity of WLCC, paid or directed the payment of fees to WLCC. The fees likely include a percentage of the revenue earned from loans made under the identity of WLCC.

29. The Pine Ridge Reservation where WLCC is located is in a remote rural area of South Dakota with a small population. In order to have an adequate customer base, Raines, Hill, Crandal, John Doe #1, and John Doe #2 intend for WLCC and anyone making loans under its name, to make loans over the internet on a national basis, to anywhere in the United States, including to Mr. Miller in Pennsylvania.

30. Raines, Hill, Crandal, John Doe #1, and John Doe #2 intend for WLCC to operate online using interactive websites from which borrowers can apply for, be approved, and enter into loan agreements over the internet from every state. Defendants intend for WLCC to issue loan agreements to borrowers located across the United States, including in Pennsylvania, for borrowers to accept online from the borrowers' location, wherever it may be.

31. Raines, Hill, Crandal, John Doe #1, and John Doe #2 intend for WLCC to transfer money to borrowers' bank accounts located across the United States,

Case 2:21-cv-00338-NIQA Document 1 Filed 01/25/21 Page 7 of 17

including in Pennsylvania, and to make ACH withdraws from borrowers' bank accounts across the United States, including from Pennsylvania.

32. In 2010, the Pennsylvania Supreme Court held that internet lenders who lend online to citizens of Pennsylvania are doing business in Pennsylvania and have to comply with the Commonwealth's banking laws and usury regulations. *Cash America Net v. Commonwealth of Pennsylvania*, 607 Pa. 432, 8 A.3d 282, 295 (2010).

33. Raines, Hill, Crandall, John Doe #1, and John Doe #2 were all on notice of the *Cash America Net* decision, but nevertheless authorized WLCC to issue, collect, and service loans over the internet to citizens of Pennsylvania at rates of interest many times the legal rate in Pennsylvania.

34. Neither Raines, Hill, Crandall, John Doe #1, nor John Doe #2, ever sought to have WLCC or any lender operating under WLCC's ownership, licensed to lend in Pennsylvania or otherwise seek to comply with Pennsylvania law in connection with loans made to and collected from Pennsylvania borrowers, including Mr. Miller. Rather, the defendants intended to disregard Pennsylvania law under the belief that the tribe and WLCC are immune from suit.

## Facts

35. One of the businesses operating under the tribe's identify uses the fictitious name Bison Green Lending. Exhibit "D." Bison Green claims to be a limited liability company called WLCC Lending BGL that is wholly owned and controlled by the Wakpamni Lake Community through the Wakpamni Lake Community Corporation. Exhibits "D."

36. In October 2019, William C. Miller was short on cash and in need of a small loan for personal, household, and family related expenses.

37. Mr. Miller searched online for a lender doing business in Pennsylvania from a computer at his house in Philadelphia, Pennsylvania.

38. As a result of his search, Mr. Miller found the Bison Green website.

39. The Bison Green website contained an interactive loan application which Mr. Miller used to apply for a loan.

40. As a result of the application, Mr. Miller received a loan in the amount of $350.00 at a rate of interest of 688.10% A.P.R. The loan was payable in a series of 10 installments of $97.82, for a total of $978.32.

41. The terms of the loan are memorialized in a loan agreement offered to and accepted by Mr. Miller at his computer in Philadelphia Pennsylvania, a copy of which is attached as Exhibit "A."

42. The terms and conditions of the loan, provided for Bison Green to wire the loan funds to Mr. Miller's bank account in Pennsylvania at the American Heritage Federal Credit Union. Exhibit "A" at 8.

43. The American Heritage Federal Credit Union is a small institution with branches located primarily in southeastern Pennsylvania. Exhibit "E" at 4.

44. The agreement authorized Bison Green to initiate loan payments by making ACH withdraws from Mr. Miller's account at American Heritage Credit Union in Southeastern Pennsylvania. Exhibit "A" at 8.

45. Mr. Miller ultimately repaid the loan, but it took him longer than the scheduled 10 payments, so he paid a finance charge in excess of the $628.32 specified in the agreement for timely payments.

46. Throughout the process of applying for and repaying the loan, representatives from Bison Green called Mr. Miller over the phone in Pennsylvania to discuss the loan and repayment of the loan.

### Class Action Allegations

47. Mr. Miller seeks to represent a class of plaintiffs defined as:

(a). Citizens of Pennsylvania who received consumer loans over the internet from entities claiming to be owned by WLCC at a rate of interest at or greater than 12% per annum from lenders who were not licensed by the Pennsylvania Department of Banking and Securities, beginning four years prior to the filing of this complaint until the present; and

(b). Citizens of Pennsylvania who received loans over the internet from Bison Green at a rate of interest in excess of 12 % per annum, beginning four years prior to the filing of this complaint until the present.

48. Mr. Miller will have to find out the size of the proposed class through discovery, but for purposes of this complaint, considering that WLCC is believed to have been in business for a number of years, and that the statute of limitations on a RICO claim extends back four years, Mr. Miller believes and therefore avers that he is one of many Pennsylvanians to have received loans from either Bison Green or WLCC over the internet at illegal rates of interest and that the number is sufficient to constitute a class under F.R.C.P. No. 23.

49. There are common questions of law and fact that apply to all class members, including but not limited to: (a) whether Pennsylvania law applies to loans from Bison Green or WLCC to borrowers in Pennsylvania; (b) whether the arbitration clause in the loan agreement is enforceable against Mr. Miller and class members; (c) whether the individual defendants are operating an enterprise through the collection of unlawful debt in violation of 18 U.S.C. § 1962, (c) whether the individual defendants have conspired to operate an enterprise through the collection of unlawful debt in violation of 18 U.S.C. § 1962, (d) whether the individual defendants are protected from suit in their personal capacity by tribal immunity.

50. The claims and defenses of the class members and defendants are identical. Every Pennsylvanian who has taken out a loan from Bison Green or WLCC has the same claims, and those claims will be subject to the same defenses.

51. Mr. Miller will fairly and adequately represent and protect the interests of the class. Mr. Miller' interest in the lawsuit is the same as the members of the proposed class.

52. This case is eligible for class certification under F.R.C.P. 23(b)(1) & (3).

53. Certification of a class is appropriate under F.R.C.P. No. 23(b)(1) because:

   (a). The prosecution of individual actions has the potential for resulting in inconsistent and potentially incompatible decisions; and

   (b). As a practical matter, the individual adjudication of Mr. Miller's claim will be dispositive of the claims of the class.

54. Certification of a class is appropriate under F.R.C.P. No. 23(b)(3) because:

(a). Common questions of law or fact predominate over individual concerns. The overarching issue is whether defendants are operating or conspiring to operate an enterprise through the collection of unlawful debt, and that question applies equally across the board to all class members. A class action is the superior method of adjudicating these issues, so every claim can be resolved in a single proceeding.

(b). Without a class action most class members will be left without a remedy because they will never know they were charged an illegal rate of interest and will probably not find it worthwhile to pursue relief for a small claim individually.

(c). Plaintiff is not aware of similar litigation being pursued on behalf of class members in any other forum.

(d). It is desirable for purposes of efficiency that class members' claims be adjudicated in a single action.

(e). Based on the similarity of the class members claims and the anticipated number of class members, probably not more than a few thousand people at most, the class should be reasonable to manage.

## Count I

55. This count is by Mr. Miller and the class against Raines, Hill, Crandall, John Doe #1, and John Doe #2 for violating, 18 U.S.C. § 1962(c), by operating an enterprise through the collection of unlawful debt. All of the preceding paragraphs are incorporated by reference.

56. Raines, Hill, Crandall, John Doe #1, and John Doe #2 are persons within the meaning of section 1962(c) as defined by section 1961(3).

57. The Wakpamni Lake Community, WLCC, and WLCC Lending BGL are all legal entities and thus each entity is an enterprise under 18 U.S.C. § 1961(4).

58. The Wakpamni Lake Community, WLCC, and WLCC Lending BGL together make up a single association in fact enterprise under 18 U.S.C. § 1961(4). The three enterprises operate in coordination with each other to accomplish a common purpose of making and collecting high interest loans over the internet from citizens across the United States including from within Pennsylvania.

59. Raines, Hill, Crandall, John Doe #1, and John Doe #2 are employed by or associated with the Wakpamni Lake Community, WLCC, and WLCC Lending BGL or a combination of these enterprises. *See supra,* ¶¶ 6-17.

60. The Wakpamni Lake Community, WLCC, and WLCC Lending BGL are engaged in interstate commerce or their actions affect interstate commerce. Specifically, each of these entities is knowingly and intentionally involved in making and servicing loans to borrowers who reside across state lines, including borrowers in Pennsylvania, or they are intentionally and knowingly involved in authorizing, organizing, and supervising interstate lending activity.

61. The individual defendants conduct or participate, directly or indirectly, in the conduct of the enterprises' affairs through collection of unlawful debt in violation of 18 U.S.C. § 1962(c):

(a). Specifically, the individual defendants all played a role, directly or indirectly, in the collection of unlawful debt from Mr. Miller.

(b).   Raines, Hill, John Doe #1, and John Doe #2 organized WLCC and WLCC Lending BGL to make loans at high rates of interest over the internet including the loan to Mr. Miller at 688.10% A.P.R. These defendants authorized WLCC and WLCC Lending BGL to make a high interest loan to Mr. Miller in Pennsylvania;

(c).   Mr. Crandal, in his role as director of compliance, is believed to have developed, implemented, and authorized the practices and procedures used by WLCC and WLCC Lending BGL to make and collect loans over the internet; Mr. Crandall authorized WLCC and WLCC Lending BGL to make a loan to Mr. Miller in Pennsylvania at 688.10% A.P.R.

(d).   John Doe #2 is believed to have organized WLCC Lending BLG d/b/a Bison Green, and caused Bison Green to engage in lending under the ownership and control of WLCC, for the purpose of making loans such as the loan to Mr. Miller in Pennsylvania. John Doe #2 directly caused WLCC Lending BLG to enter into the instant loan with Mr. Miller.

62.   WLCC's loan to Mr. Miller, as well as all class members, constitutes unlawful debt within the meaning of section 18 U.S.C. § 1962(c), as the term is defined in section 1961(6). Specifically, (a) almost all of the interest WLCC collected was unenforceable under the usury laws of Pennsylvania, (b) WLCC was in the business of making loans to citizens of Pennsylvania at usurious rates of interest, and (c) WLCC charged interest far in excess of twice the legally enforceable rate in Pennsylvania, which is 6% per annum for an unlicensed lender.

63. Mr. Miller suffered an injury as a result of the conduct of the individual defendants. Specifically, Mr. Miller paid WLCC $600.00 or more in usurious interest he did not legally owe, and all class members have suffered similar injuries.

WHEREFORE, Mr. Miller requests relief for himself and the class against the individual defendants in their personal capacities, jointly and severally, as follows:

(a). Certification of a class of similarly situated borrowers;

(b). An award of damages equivalent to three times the unlawful debt collected by the enterprises from Mr. Miller and the class;

(c). An award of attorney's fees and costs; and

(d). Any other relief that is just and appropriate.

## Count II

64. This count is against Raines, Hill, Crandall, John Doe #1, and John Doe #2 for participation in a RICO conspiracy in violation of 18 U.S.C. § 1962(d). All of the preceding paragraphs are incorporated by reference.

65. The individual defendants conspired with each other to operate the Wakpamni Lake Community, WLCC, and WLCC Lending BGL through the collection of unlawful debt in violation of 18 U.S.C. § 1962(d).

66. Specifically, the individual defendants are parties to an agreement to use the Wakpamni Lake Community, WLCC, and WLCC Lending BGL to collect unlawful debt from borrowers across the United States, including Mr. Miller in Pennsylvania and engaged in the various actions described in this complaint to carry out the agreement.

67. Pursuant to the agreement, the defendants caused unlawful debt to be collected from Mr. Miller and the class and used the money to pay for the operation of WLCC, WLCC Lending BGL, and ultimately the Wakpamni Lake Community.

68. Though not yet named as a defendant, attorney Mark Dabertin may also be a member of this conspiracy. Mr. Dabertin apparently advises the defendants how to organize a lending business under a tribal identity to escape liability using sovereign immunity, so that they can collect unlawful debt from borrowers in Pennsylvania such as Mr. Miller, and Mr. Dabertin covers up the defendants' business activities, solely for the purpose of protected the defendants from suit.

69. Mr. Miller suffered an injury as a result of the conspiracy. Specifically, Mr. Miller paid about $600.00 in usurious interest he did not legally owe. All class members have suffered similar injuries.

WHEREFORE, Mr. Miller requests relief for himself and the class against the individual defendants in their personal capacities, jointly and severally, as follows:

(a). Certification of a class of similarly situated borrowers;

(b). An award of damages equivalent to three times the unlawful debt collected by the enterprises from Mr. Miller and the class;

(c). An award of attorney's fees and costs; and

(d). Any other relief that is just and appropriate.

### Count III

70. This count is by Mr. Miller individually against the individual defendants for usury under the Pennsylvania Loan Interest and Protection Law ("LIPL"), 41 P.S. § 504 (also referred to as "Act 6"). All of the preceding paragraphs are incorporated by reference.

71. Under section 408 of Act 6, Mr. Miller's right to be free from usury cannot be waived.

72. Under section 201, the defendants may not cause Mr. Miller to be charged interest greater than 6% per annum.

73. Under Section 501, Mr. Miller is not liable to pay usurious interest.

74. Under Section 504, Mr. Miller is entitled to compensation for all damages sustained as a result of paying usurious interest.

75. Under Section 502, Mr. Miller is entitled to a mandatory award of three times the excess interest he paid. *Grigsby v. Thorp Consumer Discount Co.,* 127 B.R. 759, 764 (E.D. Pa. 1991).

76. In the present case, Mr. Miller paid several hundred dollars of usurious interest, and he is entitled to the money back with treble damages.

77. The individual defendants are personally liable based on their personal participation in the collection of usurious interest from Mr. Miller as described in this complaint.

WHEREFORE, Mr. Miller requests relief against the individual defendants in their personal capacity, jointly and severally, as follows:

(a). An award of actual and statutory damages;

(b).  An award of attorney's fees and costs; and

(c).  Any other relief that is just and appropriate.

Respectfully submitted,

_____
Robert F. Salvin (RFS2522)
Two Bala Plaza, Suite 300
Bala Cynwyd, PA  19004
215-300-2388
215-271-2820 (fax)
robert.salvin@outlook.com