UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM C. MILLER for himself and
others similarly situated,

        Plaintiff,

        v.,

GENEVA LONE HILL; BRET A.
CRANDALL III; RAYCEN RAINES, III;
JOHN DOE #1; and JOHN DOE #2,

        Defendants.

No. 21-00338

## Plaintiff's Third Set of Interrogatories to Defendants

### Definitions

"WLC:"    Refers to the Wakpamni Lake Community, a unit of municipal government of the Oglala Sioux Tribe.

"WLCC:"    Refers to the Wakpamni Lake Community Corporation.

"Tribal Credit Code:" refers to the Tribal Credit Code of the Wakpamni Lake Community of the Oglala Sioux Tribe.

"Bison Green:" means "WLCC Lending BGL," the lender identified in the loan agreement with plaintiff William Miller attached to the complaint as Exhibit "A."

"Loan:" refers to the loan William Miller received from Bison Green evidenced by the loan agreement attached to the complaint as Exhibit "A."

"Person:" includes individuals and all corporate entities.

"Lending Businesses:" means sending businesses owned by WLCC.

## Interrogatories

Plaintiff requests defendants answer the following interrogatories in accordance with the Federal Rules of Civil Procedure:

1. Describe the scope of Ms. Hill's knowledge of the lending businesses owned or operated by WLCC?

2. Describe the scope of Ms. Hill's authority over lending businesses owned or operated by WLCC?

3. Describe the scope of Mr. Raines' knowledge of lending businesses owned or operated by WLCC?

4. Describe the scope of Mr. Raines' authority over lending businesses owned or operated by WLCC?

5. State the names, addresses, and phone numbers of all other individuals or business entities with knowledge or authority over the lending businesses owned or operated by WLCC?

6. Describe the scope of Mr. Crandall's knowledge of lending businesses owned by WLCC?

7. Describe the compliance services Mr. Crandall has performed for WLCC, including but not limited to:

(a). Lending procedures and processes;

(b). State whether Mr. Crandall has reviewed, approved, or drafted the form loan agreements used by WLCC?

(c). State the names used by each WLCC lending business for which Mr. Crandall has provided compliance services?

8. Attached to these interrogatories is a document marked Exhibit "P" which was filed by Hill and Raines in tribal court. In the document, which is signed by Hill and Raines, they state that WLCC has "online lending partners" and "investors." Exhibit "P."

(a). State the names, addresses, and phone numbers of each business entity and individual that is an online lending partner or investor; and

(b). State the names, addresses, phone numbers, and positions of each individual associated with the business entities identified in the answer to interrogatory 7(a)?

9. State the names, addresses, and phone numbers of all individuals or business entities associated with the lender operating as "WLCC Lending BGL?"

10. Identify and describe any contracts between WLCC and anyone else in connection with the lender doing business as "WLCC Lending BGL?"

11. Identify the names, addresses, and phone numbers of business entities or persons providing logistical support (lending capital, call centers, computer servers, banking facilities, etc.) for the lender doing business as "WLCC Lending BGL?"

12. State the names, addresses, and phone numbers of persons with knowledge of "WLCC Lending BGL," including but not limited to:

(a). Knowledge of its operation; and

(b). Knowledge of or access to borrower account information?

13. Describe Mr. Crandall's association with a company called Tribal Regulatory Services and what he does for that company.

14. Describe how WLCC earns money from its association with or operation of the lender doing business as "WLCC Lending BGL?"

15. State the names, addresses, and phone numbers of individuals or business entities from whom WLCC receives money on account of the operation of the lender operating as "WLCC Lending BGL?"

16. With respect to the answer to interrogatory number 15:

(a). State the names, addresses, and phone numbers of any financial institutions from which funds are transferred or checks are drawn for payments made to WLCC; and

(b). State the names, addresses, and phone numbers of persons who sign checks made out to WLCC?

17. State the names, addresses, and phone numbers of:

(a). All individuals with knowledge of lending companies operating under the ownership of WLCC; and

(b). The scope of each individual's knowledge?

Respectfully submitted,

_____

Robert P. Salvin (RFS2522)
Two Bala Plaza, Suite 300
Bala Cynwyd, PA  19004
215-300-2388
215-271-2820 (fax)
robert.salvin@outlook.com

Name: _____

☐ Pro Se

OGLALA SIOUX TRIBAL COURT        )
OGLALA SIOUX TRIBE               ) SS.        IN CIVIL COURT
PINE RIDGE INDIAN RESERVATION    )            PINE RIDGE

_Wakpamni Lake Community_ )        Case No. CIV-14-0289
_Board, Rayen Raines, et al,_ )
      Petitioner,        )
                                  )
                                  )        PETITION FOR TEMPORARY
vs.                               )        RESTRAINING ORDER/
_ARLENE CATCHES THE ENEMY_ )        INJUNCTION
_(AKA) TAMMY WHALEN_ )
      Respondent.

COMES NOW, _____, Petitioner in the above-captioned matter,
and for a cause of action against the Respondent, does state and allege:

1.  Petitioner (is) (is not) a duly enrolled member of the Oglala Sioux Tribe;  If not a member of
    the Oglala Sioux Tribe, Petitioner is a member of the _____ Tribe.

2.  Petitioner's currently resides (within) (outside) the exterior boundaries of the Pine Ridge
    Reservation.

3.  Respondent (is) (is not) a duly enrolled member of the Oglala Sioux Tribe;  If not a member
    of the Oglala Sioux Tribe, Respondent is a member of the _____ Tribe.

4.  Respondent currently resides (within) (outside) the exterior boundaries of the Pine Ridge
    Reservation, with a current mailing address of: _____
    and last known physical address of: _____
    _____

5.  On or about the _18th_ day of _June_, 20_14_, Respondent committed the following
    acts: _published false statements in an_
    _Al-Jazeera article_

6.  Petitioner believes that within the immediate future Respondent will repeat the acts referred
    to in this Petition and **immediate and irreparable injury** will result to Petitioner if this
    Temporary Restraining Order is not granted. _____ (initial)

Exhibit "P"                                              001

7. Petitioner believes that within the immediate future Respondent will repeat the acts referred to in this Petition and **a serious breach of the peace** will occur if this Temporary Restraining Order is not granted. _____ (initial)

8. Petitioner advises the Court that, to the best of his/her knowledge, the following matters related to this matter are pending or active:

_____ Criminal investigation or proceeding against Respondent: (court and case no.)
_____

_____ Criminal investigation or proceeding against Petitioner: (court and case no.)
_____

_____ There is a (current) (pending) (denied) restraining and/or order of protection between the parties.  Court & Case No.: _____
_____

**WHEREFORE**, based upon this petition and the affidavit filed herewith, Petitioner prays for an Order of the Court setting a date for hearing on this matter and granting a Restraining Order as follows:

1. X  That Respondent be restrained from following, harassing, stalking, threatening, or causing bodily injury or harm to Petitioner. / *or making public false statements*

2. _____ That Respondent be restrained from any contact with Petitioner personally, directly, indirectly, through a third-party, telephonic, written, electronic, or any other manner or form.

3. _____ That Respondent be restrained from coming within _____ feet of the Petitioner personally and of his/her:
   Residence at: _____
   Work place at: _____
   Other places: _____

4. X  That a Permanent Restraining Order *on public false statements* be issued for a period not to exceed _____ year(s).

Dated this 23rd day of June, 2014.

Filed on: 6-23-14
Docket No.: CIV-14-0289
Recorded on: _____
By: AW
Clerk of Court/Deputy Clerk
Oglala Sioux Tribal Court

x _Debbie BueBird_
Petitioner

Page 2 of 3

**Exhibit "P"**

**002**

<u>VERIFICATION</u>

I, Debbie Blue Bird being the Petitioner in the foregoing Petition for Temporary Restraining Order, do hereby swear under oath, that the foregoing Petition is true to the best of my knowledge. I acknowledge that I can be charged with Perjury or Contempt of Court for false statements to the Court.

Dated this 23rd day of June, 2014.

X _____
Petitioner

Sworn and subscribed to before me on this 23 day of June, 2014

_____
Court Clerk, Oglala Sioux Tribe

Page 3 of 3

Name: _____
☐ Pro Se

OGLALA SIOUX TRIBAL COURT )
OGLALA SIOUX TRIBE ) SS.    IN CIVIL COURT
PINE RIDGE INDIAN RESERVATION )    PINE RIDGE

_Waksamni Lake Community Board,_
_Raycen Raines, et al,_
                    Petitioner.

Case No. CIV-_14_-_0289_

vs.

_Arlene Catches the Enemy_
_(aka Tammy Whalen)_
                    Respondent.

AFFIDAVIT OF PETITIONER
(RESTRAINING ORDER)

I, _Debbie Blue Bird_ the Petitioner herein, being duly sworn, deposes and states as follows:

1. I am the Petitioner in the above-captioned matter.

2. I am the person who has brought the action for a Protection Order against the Respondent.

3. On or about the _18th_ day of _June_, 20_14_ Respondent harassed, annoyed, abused, and/or threatened me by doing the following: _Published false_ _statements in an Al Jazeera article._

4. I believe Respondent will repeat the acts referred to above and that I will suffer **immediate and irreparable injury** if a Restraining Order is not granted.

5. I believe Respondent will repeat the acts referred to above and **a serious breach of the peace** will occur if a Restraining Order is not granted

6. I know and understand the contents of this affidavit and all statements herein are true and correct.

Dated this _23rd_ day of _June_, 20_14_.

_Debbie BlueBird_
Petitioner

Sworn and subscribed to before me on this _23_ day of _June_, 20_14_

_RW_
(OST Court Clerk) (Notary Public)

**Exhibit "P"**                    **004**

PETITIONER'S STATEMENT

*Please see attached
"Petitione's Statemenf" *

I have read each page of this statement, which consists of 13 page(s), with each subsequent page having been initialed by me. I hereby certify that the facts herein are true and correct to the best of my knowledge, information, and belief. I understand that making false statements to the Court could result in charges of perjury and/or contempt of court.

Petitioner's
• Geneva Lone Hill
• Debbie Blue Bird
• Lanita Palmier
• Wilma Standing Bear
• Raycen Raines
• Sandy Two Lance

*See attached
Petitioner
signatures *
on pg 13

**Exhibit "P"**

005

<u>PETITIONERS' STATEMENT</u>

*Wakpamni Lake Community Board Members, Raycen Raines, et. al*
*vs. Arlene Catches the Enemy (AKA Tammy Whalen)*
June 23, 2014

**<u>Petitioners:</u>**

- **_Geneva Lone Hill_**, President, Wakpamni Lake Community (government); President, Wakpamni Lake Community Corporation
- **_Debbie Blue Bird_**, Board Member, Wakpamni Lake Community (government); Board Member, Wakpamni Lake Community Corporation
- **_Lanita Palmier_**, Board Member, Wakpamni Lake Community (government); Board Member, Wakpamni Lake Community Corporation
- **_Wilma Standing Bear_**, Board Member, Wakpamni Lake Community (government); Board Member, Wakpamni Lake Community Corporation
- **_Raycen Raines,_** Consultant, Wakpamni Lake Community Corporation
- **_Sandy Two Lance_**, President, Wakpamni District (government)

## I.  REQUEST—TRO/PRELIMINARY INJUNCTION AGAINST MS. ARLENE CATCHES THE ENEMY *(AKA TAMMY WHALEN)*

- **WHAT:**      A Temporary Restraining Order/Injunction
- **WHO:**      Against Ms. Arlene Catches the Enemy (aka Tammy Whalen) of the Oglala Sioux Tribal Office of Economic Development
- **FROM:**      Making any additional false public comments or statements against any of the Petitioners. Particularly with regard to their economic development projects.

## II.  APPLICABLE LAW

A Temporary Injunction is the first step in obtaining a Permanent Injunction against Ms. Catches the Enemy.  The applicable law for a permanent injunction can be found in OST Law and Order Code, Chapter 2 Civil Court Section 20.24 - Preliminary Injunctions.

> "A preliminary injunction restrains activities of a defendant until the case can be determined on the merits. …[N]o preliminary injunction shall be issued absent clear and convincing proof by **<u>specific evidence</u>** that the applicant will suffer **<u>irreparable harm</u>** during the pending the litigation unless a preliminary injunction is issued, that the applicant has **<u>a high likelihood of success on the merits</u>**, and that the balance of equities favors the applicant over the party sought to be enjoined…."

*OST Law and Order Code, Chapter 2 Civil Court Section 20.24 - Preliminary Injunctions.*

1

PETITIONERS' STATEMENT

*Wakpamni Lake Community Board Members, Raycen Raines, et. al*
*vs. Arlene Catches the Enemy (AKA Tammy Whalen)*
June 23, 2014

## III.   "IMMEDIATE AND IRREPARABLE HARM"

**(A)   TORTIOUS INTERFERENCE OF BUSINESS.** Tortious Interference of Business occurs when false claims and accusations are made against a business or an individual's reputation in order to drive business away. It is a common law claim, inferred into most UCC codes by the court.

**Harm:**  Ms. Catches the Enemy's false public statements are immediately, significantly and negatively affecting our business relationships. Several of our Wakpamni Lake Community Corporation partners are considering withdrawing their investments. If this occurs the damage will be irreparable.

The only real source of income our community has is our private economic development companies. If Ms. Catches the Enemy is not stopped, all of our community revenue may disappear. Neither the Tribe nor the District have sufficient resources to meet our needs.

For example, the TERO ordinances require that Ms. Catches the Enemy's office, the Office of Economic Development set aside approximately 25% of TERO fees be utilized to assist Districts and Communities with economic development. However, this program and funding is totally ineffective. Our community has found a way to empower ourselves, despite not only the ineffectiveness of the Economic Development Office but the aggressive efforts of the office (through Catches the Enemy) to try and shut down our economic development. The irony.

**(B)   LIBEL (FALSE STATEMENTS).** The OST criminal code specifically protects individuals from false statements that harm the integrity or reputation of someone.

> It shall be unlawful to knowingly and with malicious intent **communicate** to any person orally or in writing **any information** which one knows or **should know to be false** and tends to **impeach the** honesty, **integrity**, virtue **or reputation of any person**, or which portrays or **casts any person in a false light**…. An injurious publication is presumed to have been malicious if **no justifiable motive** for making it is shown by way of defense. *Criminal Defamation, Section 564, OST Criminal Offense Code*

**Harm:** Ms. Catches the Enemy's false public statements are significantly damaging Mr. Raines reputation. This damage is causing him immediate direct harm, and therefore harms us, our community and our corporation as Mr. Raines is our community member and our corporation's business consultant. These statements are now being replicated all over the internet, the damage being caused to his reputation and ours will be irreparable if it is not stopped.

2

Exhibit "P"

PETITIONERS' STATEMENT

*Wakpamni Lake Community Board Members, Raycen Raines, et. al*
*vs. Arlene Catches the Enemy (AKA Tammy Whalen)*
June 23, 2014

## IV.     "NO JUSTIFIABLE MOTIVE"

Ms. Catches the Enemy's "motive" for this continuous libelous campaign is to protect her job by discrediting Mr. Raines and our community economic development endeavors.

Neither OST laws nor Lakota traditions and customs justify the spreading harmful lies in order to protect your own reputation and job.

In 2011 the Tribe considered hiring Mr. Raines and his business partners to conduct economic development for OST instead of Ms. Catches the Enemy's OST Office of Economic Development. Since then, Ms. Catches the Enemy has pursued aggressive efforts to discredit Mr. Raines. Unfortunately her limited understanding of business and her fear of creative economic development ideas have resulted in a series of very public false-statements that are not only libelous, they are personally and professionally harmful.

We have held off filing anything against Ms. Catches the Enemy in the past in an effort to stay above the fray of nasty tribal back biting. But yet another very public very false news article was published last week in Al-Jazeera on June 18, 2014 based on a series of interviews with Ms. Catches the Enemy.

One of our Wakpamni Lake Community Corporation businesses is online lending. Ms. Catches the Enemy has strong opinions against on-line lending, to which she is entitled. But at the heart of the issue is that Ms. Catches the Enemy fundamentally does not understand business or economic development and her false statements are taken as factual because of her position with the OST Office of Economic Development Office and the Wakpamni District Office of Economic Development.

Due to her position with the OST OED, her false statements also give the impression that the Oglala Sioux Tribe does not understand business and they may eventually harm the Tribe's own business opportunities. We have been left with no alternative. Ms. Catches the Enemy's false statements, personal vendetta against Mr. Raines, and efforts to destroy our tribal community business efforts must be stopped before the harm is irreparable.

## V.     "SPECIFIC EVIDENCE"

### (A)     OST ECONOMIC & BUSINESS DEVELOPMENT COUNCIL COMMITTEE MEETING
### SEPTEMBER 16, 2011

The subcommittee preliminarily voted to hire Mr. Raines and his team of business experts to handle the Tribe's economic development. This vote was also essentially a vote of "no confidence" for the OST Office of Economic Development (OED) and set in place the ongoing chain of events and constant and aggresive personal libel and harassment by OSTOED employee Ms. Arlene Catches the Enemy.

3

PETITIONERS' STATEMENT

*Wakpamni Lake Community Board Members, Raycen Raines, et. al*
*vs. Arlene Catches the Enemy (AKA Tammy Whalen)*
June 23, 2014

**(B)   LAKOTA COUNTRY TIMES – *Letter to the Editor from Arlene Catches the Enemy***
**OCTOBER 5, 2011**

Shortly after being shut out of the OST E&BD Committee Meeting and receiving a clear vote of "no confidence," Ms. Catches the Enemy decided to take her complaint public. She wrote a public letter, not to the Committee or the Council, but to the Lakota Country Times. The letter was full of inaccuracies and purposefully false statements in an attempt to discredit Mr. Raines and his team of economic development professionals. Below is a list of some of the specific false statements by Ms. Catches the Enemy in her first article:

- **FALSE STATEMENT:** "we tried to rush up there and give them the…due diligence report performed on Raycen Raines – we did not make it in time"
- **FACT:**  This statement infers that Mr. Raines did not pass the OST due diligence review. This is false. Mr. Raines received his "Oglala Sioux Tribe Due Diligence Pass" on January 1, 2012, just two months after Ms. Catches the Enemy made this public statement.

- **FALSE STATEMENT:** The Office of Economic Development was "unduly placed in a job defending stance."
- **FACT:**  None of the conversations by Mr. Raines or his business partners were for the purpose of destroying OED jobs. The conversations were about how to bring real economic and business opportunities to OST.  The Office of Economic Development was not created to protect the jobs of the people that work there, it is supposed to create economic development opportunities for the Tribe and communities. OED has not been effective. The focus on "job defending" rather than business development is precisely what is wrong with the OST Economic Development Office.

- **FALSE STATEMENT:** "…[w]hen [Mr. Raines] says he has 'investors' he is referring to our tribe taking out loans from those investors…The Oglala Sioux Tribe cannot afford more debt…"
- **FACT:** Sadly, Ms. Catches the Enemy is not familiar with how business investors work.  Our investors are investing. They are not loans. We bring certain benefits to the table and they bring financial resources. It is an investment, not a loan.

- **FALSE STATEMENT:** "the scary part of establishing a Section 17 is that it would take an act of Congress to dissolve it."
- **FACT:**  The Section 17 Corporation, or business model, has existed since 1934, has been shown to be one of the most effective way for Tribal commercial activity to flourish. In the form of a holding company. This structure helps remove tribal economic development from tribal politics. The congressional action required to dissolve tribal Section 17 Corporations is designed to provide much needed insulation and protection from tribal politics.

4

Exhibit "P"

009

PETITIONERS' STATEMENT

*Wakpamni Lake Community Board Members, Raycen Raines, et. al*
*vs. Arlene Catches the Enemy (AKA Tammy Whalen)*
June 23, 2014

**(C)   INVOLVEMENT OF THE BLACK HILLS SIOUX NATION TREATY COUNCIL**
- **DECEMBER 12, 2011—OST FILING**
- **JANUARY 18, 2012—OST JUDGMENT**
- **JANUARY 30, 2012—*IC MAGAZINE ARTICLE***
- **JUNE 28, 2012 – OST TRIBAL COURT – DISMISSAL OF CASE**

When Ms. Catches the Enemy's complaints to the EB&D Committee and her October 5, 2011 "Letter to the Editor" were ineffective, she reached out for others to join her. She convinced the Black Hills Sioux Nation Treaty Council that Mr. Raines and his team were trying to steal tribal land, and to file a TRO against the team.

After the filing on December 12, 2011 a temporary "default" decision was entered on January 18, 2012 because Mr. Raines was unable to attend the proceedings. Even though it was just a "default" judgment, another article was written by Natalie Hand in the IC Magazine at the instigation of Ms. Catches the Enemy. Most of the information contained in the article was a reiteration of the inaccuracies put forth by Ms. Catches the Enemy in her original article.

However, shortly thereafter the Black Hills Sioux Nation Treaty Council realized that the information they heard was false. The Treaty Council dropped on the TRO and it was dismissed on June 28, 2012.  Mr. Floyd Hand and his wife, the author of the article, Natalie Hand, then apologized.

However, the public damage to Mr. Raines' "integrity" and "reputation" had already been done by the public TRO filing and the IC Magazine Article which is now getting worse by Ms. Catches the Enemy continued campaign. Below are several of these falsehoods which were repeated in the IC Magazine article:

- **FALSE STATEMENT:** Mr. Raines' "ultimate goal is to commandeer, not only Tribal assets, but also private Tribal members' allotted land assets"/"According to their proposed partnership with the OST, they are seeking exclusive rights to allotted lands"
- **FACT:** These statements make no sense. It is not even possible to get rights to all allotted land on a reservation. However, any business entity building a business on the reservation on any type of land needs a guarantee that they get to keep their business there for a certain amount of time. Like a rental agreement. Otherwise why would they build if they cannot stay? These statement show a total lack of understanding of how business works.

- **FALSE STATEMENT:** "The central figures of this organization are Raycen American Horse Raines…. However, when OST Attorney David Frankel conducted the due diligence on their company, his discovery raised eyebrows and more questions."
- **FACT:** This statement erroneously infers that somehow something negative came up during due diligence with regard to Mr. Raines. But even the article itself refers to no negative issues with Mr. Raines' background or due diligence.

5

PETITIONERS' STATEMENT

*Wakpamni Lake Community Board Members, Raycen Raines, et. al*
*vs. Arlene Catches the Enemy (AKA Tammy Whalen)*
June 23, 2014

- **FALSE STATEMENT:** "[Mr. Raines] uses the name American Horse. However, the American Horse Tiospaye has never heard of him."
- **FACT:** The only "negative" finding supposedly listed in this article with regard to Mr. Raines' was his "American Horse" name. Like many OST tribal members, Mr. Raines grew up off the reservation. He knew his family history, name, and descendancy from his father, but at that time had not yet gotten to know the larger tiospaye.

- **FALSE STATEMENT:** "they were meeting with Tribal officials before they had possession of a valid Due-Diligent Pass"
- **FACT:** During some of the early meetings, the companies Due Diligence Pass was still being processed. However, this statement again leads the reader to believe that there was somehow an issue in obtaining the pass. This is false. Mr. Raines received his "Oglala Sioux Tribe Due Diligence Pass" on January 1, 2012, 30-days *before* this article was written.

- **FALSE STATEMENT:** "Wednesday, January 18th, 2012, a judgment was issued in OST Court against RainDancer Resource Management/American Horse Ventures LLC, et al, essentially barring them from doing any and all business on the Pine Ridge Indian Reservation."
- **FACT:** After the Black Hills Sioux Nation Treaty Council realized that they had been provided false information. They dropped the TRO and it was dismissed on June 28, 2012, and Mr. Floyd Hand personally apologized to Mr. Raines.

- **FALSE STATEMENT:** This entire article is false. http://intercontinentalcry.org/black-hills-treaty-council-wins-judgment-against-raindancer-resource-management/
- **FACT:** After the Black Hills Sioux Nation Treaty Council dropped the suit on June 28, 2012, and Mr. Floyd Hand personally apologized to Mr. Raines, Ms. Natalie Hand, Mr. Hand's wife, profusely apologized to Raines' economic development team. She attempted to retract the story but was not able to do so.

**(D)   ATTACKS AGAINST THE WAKPAMNI DISTRICT AND WAKPMANI LAKE COMMUNITY SEPTEMBER 17, 2012 – CNBC ARTICLE**

After these brutal and false attacks by Ms. Catches the Enemy, Mr. Raines understandably stayed away from her and the OST Office of Economic Development. However, our business ventures at the Wakpamni Lake Community continued. We, the Wakpamni Lake Community created our own business, a holding company, the Wakpamni Lake Community Corporation (WLCC). Under WLCC we have a number of businesses we are exploring. Mr. Raines does not own any of them. He functions as a business consultant to our tribal community company.

6

PETITIONERS' STATEMENT

*Wakpamni Lake Community Board Members, Raycen Raines, et. al*
*vs. Arlene Catches the Enemy (AKA Tammy Whalen)*
June 23, 2014

One of the businesses that the WLCC operates is an online lending company. Like gaming or liquor, there are fair differences of opinion about this business. However, it is a legal business and Ms. Catches the Enemy crossed the line from personal opinion about the business of online lending to false libel.

- FALSE STATEMENT: "a payday lending debate appears to have created a political rift in a tribal council"
- FACT: None of this debate was at a Tribal Council meeting. The meeting the article references was a Wakpamni District meeting.

- FALSE STATEMENT: "Tribal President Sandy Two Lance failed to get the support she needed to sign the proposed contract."
- FACT: Sandy Two Lance is not the Oglala Sioux tribal president, she is the Wakpamni District president. It was not simply President Two Lance looking for support, it was the people. All 40+ district members in attendance at the Wakpamni District meeting, except one, voted in favor of the business and the contract. The opposition came not from the people, but from District Executive Board members Richard Little Hawk and Joanne Sierra.

- FALSE STATEMENT: "[President Two Lance] she says she will sign the deal anyway."
- FACT: These statements came from an audio recording made by Ms. Catches the Enemy. The mischaracterization, however, leads the reader to believe President Two Lance proceeded to act rouge on her own. When in fact, the President felt she as the President had a responsibility to listen to the nearly consensus vote of the people. In the end the decision was made not to create businesses with the District government. Instead the Wakpamni Lake Community government decided they wanted to create a business, the Wakpamni Lake Community Corporation.

- FALSE STATEMENT: "…the contract was not valid, because the top leaders hadn't agreed to the deal. And one said he was shocked when CNBC called and pointed out that the payday lending business…says on its website that it is affiliated with the Wakpamni District."
- FACT: This is incorrect. There are no contracts with the Wakpamni District and none of he business are with the District. All businesses are with the Wakpamni Lake Community government, not the Wakpamni District government.

- FALSE STATEMENT: "We were not aware of this payday lending project on the Internet until you brought it to our attention," said Richard Little Hawk, the secretary of the Wakpamni District. "We believe that a fraud has been committed on us and these individuals pulled a fast one on us."
- FACT: Mr. Little Hawk himself is under investigation for District and Empowerment Zone fraud accusations and is no longer a member of the Wakpamni District Board.

7

PETITIONERS' STATEMENT

*Wakpamni Lake Community Board Members, Raycen Raines, et. al*
*vs. Arlene Catches the Enemy (AKA Tammy Whalen)*
June 23, 2014

- **FALSE STATEMENT**: "tribal president Sandy Two Lance who agreed that her signature on the payday lending contract had not been made according to tribal procedure, but she said she shredded the agreement when other members of the tribe complained."
- **FACT**: Sandy Two Lance is not the Oglala Sioux tribal president, she is the Wakpamni District president. No online lending contract was ever finalized by the Wakpamni District. After the District Board overruled the vote of the District members, the Wakpamni Lake Community created its own holding company, the Wakpamni Lake Community Corporation.

- **FALSE STATEMENT**: "Richard Little Hawk said he has not spoken to Sandy Two Lance in months, and does not know where the tribal president is."
- **FACT**: Sandy Two Lance is not the Oglala Sioux tribal president, she is the Wakpamni. District president. She was not in contact with Mr. Little Hawk because he was under investigation.

**(E)    JUNE 2014 – SECOND ROUND OF MS. CATCHES THE ENEMY'S ATTACKS**
- **JUNE 18, 2014**    *AL-JAZEERA NEWS ARTICLE*
- **JUNE 19, 2014**    OST CLOSED TRIBAL COUNCIL MEETING RE MR. RAINES/WLCC

The end of March 2014 Ms. Catches Enemy ran into Mr. Raines at a tribal economic development conference and her public discrediting campaign was reignited. Since that time, Ms. Catches the Enemy has been pushing the OST Tribal Council to investigate Mr. Raines, which really means an investigation of the Wakpamni Lake Community economic development efforts. As such, the OST Tribal Council now has false information about Mr. Raines and our corporation. The Wakpamni Lake Community has sent a letter to the OST Chairman and Council demanding a special Council meeting on these issues before any discussions or actions are taken.

In addition she participated in yet another interview for public news article with extensive false information about Mr. Raines and our businesses. On June 18, 2014 Al-Jazeera America produced a sensational and false article based on interviews with Ms. Catches the Enemy.

- **FALSE STATEMENT**: "Despite the tribe's refusal, Raines went ahead and set up an online payday business anyway."
- **FACT**: These statements are completely false and misleading. They lead the reader to believe Mr. Raines set up his own online lending business. This is false. Mr. Raines was brought it as a business consultant by the Wakpamni lake Community. The Community created its own corporation. Their corporation has an online lending company.

8

Exhibit "P"                                                                 013

PETITIONERS' STATEMENT

*Wakpamni Lake Community Board Members, Raycen Raines, et. al*
*vs. Arlene Catches the Enemy (AKA Tammy Whalen)*
June 23, 2014

- **FALSE STATEMENT:** "Today, at least 14 payday lending websites claim to do business from Pine Ridge."
- **FACT:** This statement is false and misleading. We have one company with several businesses. One of our online businesses may have multiple websites, this leads the reader to believe there are more companies than there actually are.

- **FALSE STATEMENT:** "Catches the Enemy had no idea Raines had set up the lending companies without the tribe's approval."
- **FACT:** As stated above, Mr. Raines did no such thing. These are Wakpamni Lake Community companies. But more importantly, Ms. Catches the Enemy leave the impression that the Community should have some how checked in with her, and somehow they broke some rules.

  Ms. Catches the Enemy has no authority whatsoever, on behalf of Tribe or anyone else to be monitoring everyone's business activities. She would have no idea about the Wakpamni Lake Community's economic development activities because it is not her business.

- **FALSE STATEMENT:** "... Catches the Enemy said a tribal court had issued a temporary restraining order in early 2012 against Raines, preventing him from doing business on the reservation, and that the order had been served upon him with his attorney present."
- **FACT:** Ms. Catches the Enemy knows full well that the Black Hills Sioux Nation Treaty Council dropped the case based on her falsehoods, and apologized to Mr. Raines. She purposefully left that information out of her statements to leave the impression that the claim had somehow been valid.

- **FALSE STATEMENT:** "...could continue doing business if they found a sovereign native tribe to serve as their legal shield: The principle of tribal sovereignty offers immunity from the enforcement of state laws."
- **FACT:** This entire statement is false and offensive. The Wakpamni Lake Community Corporation is the community's own governmental corporation. Of course we have investors and outside partners, as does any corporation.

  How paternalistic to assume we are not sufficiently savvy to choose our own business partners and make our own business decisions. All of our economic development projects operate legally within the bounds of the Oglala Sioux Tribal constitution and laws, and all of our own local government rules and regulations. Our businesses do not "operate outside of state law," they operate "within" our own laws.

- **FALSE STATEMENT:** "...in January 2012, Raines made his pitch to the Wakpamni district..."/"the Wakpamni district board refused"/"Raines kept making the loans anyway."/"The lending company therefore operates without the tribe's official sanction."

Exhibit "P"

PETITIONERS' STATEMENT

*Wakpamni Lake Community Board Members, Raycen Raines, et. al*
*vs. Arlene Catches the Enemy (AKA Tammy Whalen)*
June 23, 2014

- **FACT:** Everything about these statements are false, misleading, and extraordinarily harmful to our businesses. Ms. Catches the Enemy was at one meeting. She has absolutely no idea what has occurred since then. The Wakpamni District chose not to pursue economic development. But the Wakpamni Lake Community did. We set up the governmental Wakpamni Lake Community Corporation, a simple holding company. We followed the OST constitution, regulations and rules. And passed our own additional rules and regulations. We chose online lending as one of our tribal governmental businesses. Ms. Catches the Enemy has no idea, because it is none of her business.

- **FALSE STATEMENT:** The company "does not share any profits with the tribal government. "The tribe has no ownership in that business," confirmed Bob Palmier, director of the tribe's revenue office. That means the company does not have a legal affiliation with the Oglala Sioux…."
- **FACT:** These statements are harmful, false and misleading. The profits of the Wakpamni Lake Community Corporation go to the Wakpamni Lake Community government. Of course they do not go to the Tribe, it is not the Tribe's company. Of course the Tribe has no "ownership" in our business, because it is our company." The Wakpamni Lake Community government has "no legal affiliation with the Oglala Sioux"? Then who do we belong to? Shall we secede and join the Rosebud Sioux Tribe?

- **FALSE STATEMENT:** "In 2013, consumers filed 59 complaints against six of the Wakpamni online lending sites, according to data from the Federal Trade Commission. Most of the complaints, which came from residents of 20 different states…."
- **FACT:** This small number of complaints is not significant compared to the large amount of business we do and number of customers we have. However, we are Lakota people. We take any complaint seriously. We want to provide a good product in a good way to good people who need some extra help. We cannot operate as a successful business if our customers are not happy with our products and service. In addition South Dakota is not one of the "20 different states." We do not sell our products on Pine Ridge or anywhere in the state of South Dakota.

- **FALSE STATEMENT:** "Lone Hill said half of that money goes to Raines, who uses it to help fund a native culture performance troupe (www.lakotaways.com) and another group devoted to saving wild mustangs. Lone Hill gets the rest. She said she uses her share to buy fresh meat, fuel and other supplies for needy families in the area."
- **FACT:** This statement is not exactly accurate, and drastically underestimates the true positive contributions to the Community that have been made as a result of the Wakpamni Lake Community Corporation businesses, including online lending. Below we will outline in more detail some of these accomplishments.

10

Exhibit "P"                                             015

PETITIONERS' STATEMENT

*Wakpamni Lake Community Board Members, Raycen Raines, et. al*
*vs. Arlene Catches the Enemy (AKA Tammy Whalen)*
June 23, 2014

## FACT: ACCOMPLISHMENTS

At heart, Ms. Catches the Enemy does not know anything about our company or what it has accomplished, because neither she nor the OST Office of Economic Development have been involved. In fact, as you can see from this filing they have been the number one impediment to our progress.

**Wakpamni Lake Community.** Within our own community the income from our online lending has accomplished three main things.

(1) **Direct Assistance.** Unfortunately Tribal assistance is insufficient to meet our community needs. The proceeds we make from online lending we use to meet the direct and immediate needs of our community members. We cover heating bills, gas costs to go to doctor appointments, and all sorts of necessary community needs as they arise.

(2) **Wakpmani Community Governmental Projects.** One of our most significant accomplishments is the ability to fund our community government projects. Refurbished an unused building into a community admin and tutoring center. We have purchased a community bus, funded a successful bingo enterprise, funded both children and adult local sports teams, and we are ready to break ground on our softball field improvements. We also fund our community powwow needs, such as food, drum groups, port-a-potties and family donations.

(3) **Economic Diversification.** We have taken the good reputation we have built as a reliable Corporation to our online lending partners and started investing in other businesses. We are hoping to follow business best practices by having our holding company invest in and operate many different types of businesses. Not unlike other/existing tribal commercial enterprises pursuing self-sufficiency for the benefit of their community.

We have done this by coming together as a community, organizing our priorities, forming the community holding company, creating the necessary infrastructure, forming business partner relationships, showing the commercial world we can be sustainable, and then using that momentum to diversify into multiple industries and employment for our community members.

**Reservation-Wide.** In addition to all that our Corporation has done for us, Mr. Raines has made sure that we reinvest a significant portion of the profits into tribal economic development for the rest of the Oyate as well. In particular, he has founded and organized the Lakota art, culture, and performance company Lakota Ways.

Lakota Ways has become one of the largest private employers on the reservation and it creates a platform for local artists, OLC fine arts/Lakota studies students to bring their talent of Lakota Arts and Culture into private enterprise within the Tourism and Education sector. It is a private enterprise without assistance from the Tribe, Federal, State, College, or Church. It is overseen by Tribal Elders and authenticated by the Oglala historians.

11

<u>PETITIONERS' STATEMENT</u>

*Wakpamni Lake Community Board Members, Raycen Raines, et. al*
*vs. Arlene Catches the Enemy (AKA Tammy Whalen)*
June 23, 2014

Examples of just some of the businesses and projects created by Mr. Raines' economic development re-investment include:

(1) **"Native Fashion Week"— LNI Lakota Artist Talent Performance Showcase**
(2) **Lakota Ways – Traditional Stories Preservation Project**
(3) **Lakota Ways – Hospitality Performance Company**
(4) **Lakota Ways – School Performances**
(5) **Lakota Ways – Lakota Artist Store**
(6) **Rev Co – Production Company And Talent Agency For Lakota Artist**
(7) **Rev Co – Handmade Lakota Fashion line**
(8) **Lakota Sacred Horse Rides – Food/Fuel/Assistance Sponsorship Program**

## VI.   <u>CONCLUSION</u>

If the Tribe chooses to employ Ms. Catches the Enemy with the Office of Economic Development that is clearly their choice. But as she does not understand the fundamentals of economic development or business, her public statements about Mr. Raines and about our community economic development efforts are incorrect, inaccurate, false, libelous, and are significantly harming our successful economic development efforts.

We respectfully request a court order enjoining Ms. Catches the Enemy from any further libelous and false comments against Mr. Raines, the Wakpamni Lake Community Corporation, or any of our economic development projects before we lose all of our hard earned progress and all of our business partners.

12

## PETITIONERS' STATEMENT

*Wakpamni Lake Community Board Members et. al*
*vs. Arelene Catches the Enemy (AKA Tammy Whalen)*
June 23, 2014

_____  6/23/14
**Geneva Lone Hill,**
President, Wakpamni Lake Community
President, Wakpamni Lake Community Corporation


_____  6/23/14
**Debbie Blue Bird,**
Board Member, Wakpamni Lake Community
Board Member, Wakpamni Lake Community Corporation


_____  6/23/14
**Lanita Palmier,**
Board Member, Wakpamni Lake Community
Board Member, Wakpamni Lake Community Corporation


_____  6/23/14
**Wilma Standing Bear,**
Board Member, Wakpamni Lake Community
Board Member, Wakpamni Lake Community Corporation


_____  6/23/14
**Raycen Raines,**
Consultant, Wakpamni Lake Community Corporation


_____  6/23/14
**Sandy Two Lance,**
President, Wakpamni District

13

**Exhibit "P"**

018

Filed on: _____

OGLALA SIOUX TRIBAL COURT          )        Docket No.: CIV-11-0359K
OGLALA SIOUX TRIBE                 ) SS.    Recorded on: IN CIVIL COURT 7-02-2012
PINE RIDGE INDIAN RESERVATION      )        By: __PINE RIDGE__ Hb
                                            Clerk of Court/Deputy Clerk

                                            Oglala Sioux Tribal Court
BLACK HILLS SIOUX NATION TREATY    )        CASE NO. CIV-11-0359K
COUNCIL, CHIEF OLIVER RED CLOUD,   )
And FLOYD HAND,                    )
                  Plaintiffs,      )
                                   )
vs.                                )        ORDER OF DISMISSAL
                                   )
RAINDANCE RESOURCE MANAGEMENT      )
(ABN) AMERICAN HORSE VENTURES, LLC )
*Et al.*                           )
                  Defendants.      )

NOW ON THIS 28th day of June, 2012, the above matter came before this Court on Plaintiff's Petition for Preliminary and Permanent Injunction.   Floyd Hand in person and by and through Plaintiff's lay advocate William Bielecki.  Defendants appeared in person and by and through its lay advocate, Holly Wilson – who appeared late.

WHEREAS, Plaintiff advised the Court that, based upon new evidence, it wanted to withdraw its Petition.

IT IS HEREBY ORDERED that this case shall be, and is, hereby dismissed with out prejudice.

IT IS FURTHER ORDERED that the Temporary Restraining Order entered on December 12, 2011 is released.

SO ORDERED on this 28th day of June, 2012.

BY THE COURT:

*Paula Langworthy*
Paula D. Langworthy, Chief Judge

Attest:

*Theresa Two Bulls*
Clerk of Court/Deputy

(SEAL)

Copy of Order to:
William Bielecki, lay advocate for Plaintiff,
Holly Wilson, lay advocate for Defendant,
Denise Brings Him Back (AOF)

UNITED STATES
POSTAL SERVICE

Serial Number

22102942768

POSTAL MONEY ORDER

Year, Month, Day    Post Office
2014-06-23    57700

U.S. Dollars and Cents
$20.00

TWENTY DOLLARS & 00¢ ****************************

Clerk

Pay to ___ PSI Const

Address ___ Box 280
___ Pine Ridge SD

Memo ___

From ___ Deb Blue Bird

Address ___ Butte Island

⑈:0000000 20:    ⑆22102942768

SEE REVERSE WARNING • NEGOTIABLE ONLY IN THE U.S. AND ITS TERRITORIES

RECEIVED
JUN 23 2014
BW